IN THE UNITED STATES DISTRICT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| RENEE PAULEY AND KELSEY PAULEY, by and through Next Friend, Renee Pauley, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | )     Case No. 03-1025-CV-W-DW |
| | ) |
| BALL METAL BEVERAGE CONTAINER CORPORATION, et al., | )<br>)<br>)<br>) |
| Defendants. | ) |

ORDER

Before the Court is Defendant Ball Metal Beverage Container Corporation's ("Ball") Motion for Summary Judgment (Doc. 87), Defendant GeoEnergy International Corporation and Donald Vandersypen's Motion for Summary Judgment to Dismiss for Lack of Subject Matter Jurisdiction (Doc. 90) and Plaintiffs' Motion for Leave to File Suggestions in Opposition Out of Time (Doc. 99). For the following reasons, (1) Plaintiff's Motion for Leave to File Suggestions in Opposition Out of Time is granted; (2) Ball's Motion is granted; and (3) Plaintiffs' claims against GeoEnergy and Mr. Vandersypen's are dismissed for lack of subject matter jurisdiction.

I.     Factual Background

This case arises out of an August 1, 2000 accident in which Mark Pauley was killed while working for Ace Pipe Cleaning ("Ace") on Ball's premises. Ball hired GeoEnergy International as an independent contractor to remove ceramic material from a regenerative thermal oxidizer ("RTO") and install new ceramic material in the RTO located at Ball's Kansas City, Missouri

1

facility.

GeoEnergy then subcontracted with Ace to remove the ceramic material from the RTO. The contract between GeoEnergy and Ace provided that Ace would furnish the necessary equipment, labor and supervision to vacuum media from the RTO located on Ball's premises.

On August 1, 2000, Mark Pauley, an Ace employee, was removing ceramic material from the RTO in connection with his employment. Both Donald Vandersypen, field superintendent for GeoEnergy, and Gary Cook, job foreman for Ace regarding the removal of the ceramic material from the RTO were present on the site.

During the course of the project, it became clear that it would take longer than had been anticipated. A vacuum truck being operated by James Hamilton, an Ace employee, overheated due to heavy use. Mr. Cook brought in an air hammer/chisel, the cost of which, Ball agreed to reimburse. That afternoon, a piece of the ceramic material pinned Mr. Pauley against the wall of the RTO, resulting in his death. Mr. Pauley's estate made a worker's compensation claim with Ace.

II.     Plaintiff's Motion for Leave to File Suggestions in Opposition Out of Time

Plaintiffs' Suggestions in Opposition to Defendant Ball Metal's Motion for Summary Judgment were due on October 11, 2005. Plaintiffs' counsel attests that at approximately 7:30 p.m. on October 11, 2005, at attempt was made to electronically file their Suggestions in Opposition to Defendant GeoEnergy's Motion for Summary Judgment. Plaintiffs were prevented from filing their document at that time due to the court system's computer problems. Plaintiffs' Suggestions in Opposition were mailed to Defendant Ball on October 11, 2005 and filed with the Court on October 12, 2005.

2

Section V of the CM/ECF Administrative Procedures Manual states:

> The Clerk shall deem the WDMO Public Web site to be subject to a technical failure on a given day if the Site is unable to accept filings continuously or intermittently over the course of any period of time greater than one hour after 12:00 noon that day, in which case filings due that day which were not filed due solely to such technical failures shall become due the next business day. Such delayed filings may be rejected unless accompanied by a declaration or affidavit attesting to the filing person's failed attempts to file electronically at least two times after 12:00 p.m. separated by at least one hour on each day of delay due to such technical failure. If you have questions about CM/ECF, please call our Help Desk at 1-800-466-9302.

Despite the fact that Plaintiffs did not attempt to electronically file at least twice, separated by at least one hour, the Court finds that due to the CM/ECF failure, the Suggestions in Opposition became due October 12, 2005. Accordingly, Plaintiff's Motion for Leave to File Suggestions in Opposition Out of Time is granted.

III.     Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be rendered if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Issues of fact must be material to a resolution of the dispute between the parties; where the only disputed issues of fact are immaterial to the resolution of the legal issues, summary judgement is appropriate. Case v. ADT Automotive, 17 F.Supp.2d 1077 (W.D. Mo. 1997) (citing Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992)).

In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. Adickes v. S.H. Kress & Co., 398 U.S.

3

144, 157 (1970); Inland Oil and Transport Co. v. United States, 600 F.2d 725, 727 - 28 (8th Cir.), cert. denied, 444 U.S. 991 (1979). However, in evaluating a motion for summary judgment the Court only considers admissible evidence. Duluth News-Tribune v. Mesabi Pub. Co., 84 F.3d 1093, 1098 (8th Cir. 1996). A party may not defeat summary judgment with evidence that fails to comply with the Rule 56(c) requirement that materials submitted in opposition to a motion for summary judgment embody sworn testimony. Schulz v. Young Men's Christian Ass'n of the U.S., 139 F.3d 286, 289 (1st Cir. 1998).

IV. Discussion

    A. Ball

To establish that Ball is subject to liability for the injuries suffered by Mr. Pauley, Plaintiffs must provide evidence that Ball exercised substantial possession and control over the details of the work performed by GeoEnergy. Plaintiffs have failed to provide any such evidence.

Under Missouri law, a property owner owes an invitee the duty to use reasonable and ordinary care to prevent injury to the invitee, including the employee of an independent contractor who has permission to use a landowner's premise or facilities. Matteuzzi v. Columbus P'ship, 866 S.W.2d 128, 132 (Mo. 1993). However, if the landowner hands control of the premises over to an independent contractor, the duty of care shifts to the independent contractor. Id. at 132. To establish that a landowner retained possession and control of the premises, thereby preventing a shift of the duty of care, a plaintiff must show that the landowner controlled the jobsite and the activities of the subcontractor. Id. Such control "must go beyond securing compliance with the contracts; the owner must be controlling the physical activities of

4

the employees of the independent contractors or the details of the manner in which the work is done." Hamlick v. SBC Corporate Servs, Inc., 832 S.W.2d 925, 929 (Mo. App.1992). At issue is whether Plaintiffs have presented evidence establishing a genuine issue as to whether Ball retained sufficient possession and control of the premises.

Plaintiffs first point to the terms of the contract between Ball and GeoEnergy which include the timing of the project, construction schedule, and specific remedies and actions that Ball could require GeoEnergy to take. However, a contract requiring a subcontractor to follow, among other things, a sequence of construction, does not constitute an exercise of substantial control by the landowner. Logan v. Sho-Me Elec. Co-op, 122 S.W.3d 670, 677 (Mo. App. S.D. 2003) ("A contract that requires an independent contractor to use specified materials, follow detailed construction documents, and adhere to directives about the sequence of work are not sufficient to show an owner is so substantially involved in overseeing construction as to justify imposing liability on the owner"); Lawrence v. Bainbridge Apartments, 919 S.W.2d 566, 570 (Mo. App. 1996) (the requisite landowner control must be "more substantial than merely securing compliance with the contract or choosing the type of job to be done.").

Second, Plaintiffs argue that Ball actually controlled the equipment and methods used to remove the ceramic media in that (a) a Ball employee directed an Ace employee to operate a vacuum truck more quickly; (b) Ball employees pressured Ace employees to finish the job on time; and (c) Ball's project manager selected an air hammer/chisel to remove the material.

Plaintiffs rely on James Hamilton's OSHA statement to support their contention that a Ball employee instructed an Ace employee to "push the vacuum gauges to the red line to remove the material faster" and that Ball employees placed time pressure on Ace employees to complete

5

the job in the originally scheduled time frame. This evidence, however, fails to raise a genuine factual dispute. First, it is unclear whether this statement is sworn, as Plaintiffs allege. Therefore, its conformance with the requirements of Rule 56(c) is called into question. Second, Mr. Hamilton does not testify that he was instructed to increase the power of the vacuum truck. Second, even if Mr. Hamilton's OSHA statement is taken as sworn and true, it fails to rise to the level of substantial control of the premises. Owens v. Shop 'N Save Warehouse Foods, Inc., 866 S.W.2d 132, 133 (Mo. 1993) (landowner's insistence that the subcontractor use less safe type of paint due to the construction deadline failed to establish that the landowner exercised control sufficient to expose the landowner to liability); Hamlick, 832 S.W.2d at 926 (a landowner does not exercise a substantial degree of control over the land when two of the landowner's employees station themselves at the construction site to observe the work and insure that it proceeded properly).

Plaintiffs also state that a Ball employee had a role in selecting an air hammer/chisel to remove the material. However, the testimony to which Plaintiffs point actually states that Ball's employee did *not* instruct that the air hammer/chisel be retrieved and/or used, but that Mr. Cook would be reimbursed for the chisel. Even if the evidence cited by Plaintiffs showed that Ball supplied the tool (which it does not), such evidence would fail to rise to a level of substantial control over the premises. Logan, 122 S.W.3d at 676 ("Evidence is insufficient to impose liability when it merely shows that an owner provides an independent contractor with some of the materials with which to perform the construction.").

Third, Plaintiffs argue that Ball had actual control and knowledge of a lack of supervision by Donald Vandersypen, GeoEnergy field superintendent. The fact that Ball was contractually

6

endowed with the power to terminate a GeoEnergy employee fails to show that Ball controlled the "physical activities of the employees" or the "details of the manner in which the work is done."

Accordingly, Ball's Motion for Summary Judgment is GRANTED.

B. <u>Defendant GeoEnergy International Corporation and Donald Vandersypen's Motion for Summary Judgment to Dismiss for Lack of Subject Matter Jurisdiction</u>

Defendants GeoEnergy and Donald Vandersypen's Motion for Summary Judgment raises the exclusive jurisdiction of the Commission under the Workers' Compensation Law. Because the Court finds that it lacks subject matter jurisdiction to hear the case, Plaintiffs' claims against GeoEnergy and Mr. Vandersypen are dismissed for lack of subject matter jurisdiction. FED. R. CIV. P. 12(b)(1).

1. <u>Ball</u>

The Missouri's Worker Compensation Law ("WCL") applies to certain constructive employment relationships in which employers have work done by contract. <u>Sexton v. Jenkins & Associates, Inc</u>., 41 S.W.3d 1, 4 (Mo. App. 2000) (citations omitted). In this case the WCL provides for the exclusive rights and remedies of injured workers. Mo. Rev. Stat. § 287.120. Pursuant to § 287.040.1,

> Any person who has work done under the contract on or about his premises which is an operation of the ususal business which he there carries on shall be deemed an employer and shall be liable under this chapter to such contractor, his subcontractors, and their employees, when injured or killed on or about the premises of the employer while doing work which is in the usual course of his business.

However, for the purposes of this section, GeoEnergy is Mr. Pauley's statutory employer:

> The provisions of this section shall not apply to the owner of premises upon which improvements are being erected, demolished, altered or repaired by an independent

7

contractor but such independent contractor shall be deemed to be the employer of the employees of his subcontractors and the subcontractors when employed on or about the premises where the principal contractor is doing work. Mo. Rev. Stat. § 287.040.3.

"Where the facts are not in dispute as to the nature of the agreement and the work required by it, the existence or absence of statutory employment is a question of law for the courts to decide." Bass v. National Super Markets, Inc., 911 S.W.2d 617, 621 (Mo. banc 1995).

GeoEnergy entered into a written contract with Ball to perform work at its facility. Under the terms of the contract, GeoEnergy was to act as the independent contractor for the project. GeoEnergy subcontracted with Ace to perform a portion of the project. Mr. Pauley was an Ace employee working in the scope of his employment at the time of the accident. Based on these facts, GeoEnergy is the statutory employer of Mr. Pauley under § 287.040.3 as matter of law. Sexton, 41 S.W.3d at 4-5.

As the Court finds GeoEnergy's status under § 287.040.3 to be outcome determinative, it refrains from examining GeoEnergy's status under § 287.040.1.

2. Donald Vandersypen

The immunity provided to employers under the WCL likewise extends to employees carrying out their employer's duties. Sexton, 41 S.W.3d at 5. That immunity is lost, however, if a co-employee causes or increases his fellow employee's risk of injury. Id. To sustain a claim against a co-employee, a plaintiff must allege "'something extra' beyond a breach of general supervision and safety for the co-employee to be liable.'" Id. Plaintiff has failed to demonstrate a genuine issue of material fact as to whether Mr. Vandersypen engaged in "something extra" such that he would be subject to liability.

Plaintiffs argue that Mr. Vandersypen engaged in "something extra" because he

8

performed work inside RTO by digging a trench and using the air hammer. These acts do not establish the requisite "something extra." First, there is no evidence that conforms with the requirements of Rule 56(c) establishing any of these allegations. Plaintiffs rely on a transcription of Mr. Vandersypen's interview with OSHA. While Mr. Vandersypen was alerted that it is unlawful to make false statements of representations pursuant to the Occupational Safety and Health Act of 1970, he was not sworn. Further, even if the evidence conformed to the Rule, such activity would constitute a failure to supervise, not "something extra." As such, Mr. Vandersypen's conduct would constitute a breach of a non-delegable duty of GeoEnergy, nothing more. See Risher v. Golden, Case No. ED86758 (Mo. Ct. App., November 15, 2005); Sexton, 41 S.W.3d at 5. Accordingly, Plaintiffs' petition against Mr. Vandersypen is dismissed for lack of subject matter jurisdiction.

V.      Conclusion

For the forgoing reasons, Defendant Ball's Motion for Summary Judgement (Doc. 87) is GRANTED. Plaintiffs' petition against Defendants GeoEnergy and Donald Vandersypen is dismissed for lack of subject matter jurisdiction.

IT IS SO ORDERED

/s/ DEAN WHIPPLE

Dean Whipple
United States District Judge

DATE:  November 28, 2005

9